UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICIA ARIANO,<br>    *Petitioner*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>    *Defendant*. | Civil No. 3:09cv1728(JBA)<br><br>December 13, 2012 |

**RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Patricia Ariano, proceeding pro se, petitions for a writ of habeas corpus and moves to set aside her sentence [Doc. # 1] under 28 U.S.C. § 2255. In support of her petition, Ms. Ariano argues (1) that her counsel failed to correct inaccuracies in calculations regarding her restitution, which would have resulted in a lower loss amount, lower adjusted offense level, and lower sentence, (2) that her counsel failed to inform her to file an appeal, and (3) that the amount of restitution ordered as part of her sentence is "inaccurate." For the reasons discussed below, no evidentiary hearing is necessary, and Ms. Ariano's petition will be denied.

    **I.**    **Factual and Procedural Background**

On April 2, 2009, Ms. Ariano waived her right to indictment and pleaded guilty to a one–count information charging her with bank fraud in violation of 18 U.S.C. § 1344. (*See United States v. Ariano*, 09cr76, Information [Doc. # 1].) The parties executed a written plea agreement, in which they stipulated that

> [b]eginning in or about February of 2006, and continuing until in or about May 2007, the exact dates unknown, in the District of Connecticut, the defendant knowingly and intentionally devised and executed a scheme to defraud Webster Bank, . . . which, at all relevant times had deposits

insured by the Federal Deposit Insurance Corporation, of moneys and property.

(Plea Agreement, 09cr76 [Doc. # 22] at 11.) They further stipulated that Ms. Ariano's applicable sentencing guidelines range was 41–51 months' imprisonment with a fine range of $7,500 to $75,000. (Plea Agreement at 4.) Included in the Plea Agreement was a waiver of the right to appeal or collaterally attack Ms. Ariano's sentence "if that sentence does not exceed 51 months, even if the Court imposes such a sentence based on an analysis different from that specified above." (*Id.*) The parties agreed that the amount of restitution was $516,000. (*Id.* at 2.)

At the April 2, 2009 hearing, Ms. Ariano stated in open court that she read the Plea Agreement and understood it. (Waiver and Plea Hr'g Tr., 09cr76 [Doc. # 13] at 16.) The Assistant U.S. Attorney specifically described the waiver of her right to appeal or collaterally attack her sentence (*id.* at 23:8–18), and Magistrate Judge Margolis drew Ms. Ariano's attention to the waiver, asking if she understood the waiver provision (*id.* at 32:5). Ms. Ariano indicated, "[y]es, Your Honor." (*Id.* at 32:6.) The Court confirmed the amount of restitution that was stipulated to in the Plea Agreement (*id.* at 30:2–4), which Ms. Ariano stated that she understood (*id.* at 30:6).

On June 22, 2009, the Court imposed a sentence of 33 months' imprisonment, a three-year term of supervised release, and an order of restitution in the amount of $516,000. The Court determined Ms. Ariano's Guideline range to be 33–41 months based on an adjusted total offense level of 20, with a Criminal History Category of I. (Sent. Tr. [Doc. # 24] at 8:1–8.)

**II.      Discussion**

In her § 2255 petition, Ms. Ariano first argues that she "was not advised by [her] attorney to file an appeal" (Pet. at 3), and, second, asserts "denial of effective assistance of counsel" (*id.* at 4). As support for her ineffective assistance of counsel claim, she argues:

> The amount of restitution is inaccurate. I paid $234,000 prior to my dismissal from Webster Bank, which can be confirmed by FBI agent Chris Crispino and Prosecutor Edward Kang. The original amount of misappropriated funds was $516,000. 2 CD accounts were restored to full value $104,000 & 85,000 prior to my termination the Bank (Webster) seized funds in my personal accounts upon my dismissal on 5/10/2007 in the amount of $45,000[.] There, my sentencing point level should be lower than 20; I believe this would reduce my minimum guideline to a significantly lower level.

(*Id.*)

To obtain collateral relief under 28 U.S.C. § 2255, a petitioner must show that her sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Habeas corpus relief is an extraordinary remedy and should only be granted where it is necessary to redress errors that, were they left intact, would "inherently result in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). As a general rule, "relief is available under § 2255 only for constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Napoli v. United States*, 32 F.3d 31, 35 (2d Cir. 1994).

The Government makes two arguments in opposition to Petitioner's § 2255 petition: (1) Ms. Ariano's collateral attack on her conviction and sentence is precluded by the waiver contained in her Plea Agreement, and (2) even if Ms. Ariano were allowed to

bring this § 2255 motion, her assertion of ineffective assistance of counsel is without merit.

### A. Knowing and Voluntarily Waiver

"Where the record clearly demonstrates that the defendant's waiver of her right to appeal a sentence within an agreed Guidelines range was knowing and voluntary, that waiver is enforceable." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004). "Waivers of collateral attack rights are unenforceable, however, when entered into with ineffective assistance of counsel, . . . or when they are not knowing and voluntary." *Morales v. United States*, 373 F. Supp. 2d 367, 374 (S.D.N.Y. 2005).

The Second Circuit has stated that "[k]nowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." *Tellado v. United States*, 799 F. Supp. 2d 156, 176–77 (D. Conn. 2011) (quoting *United States v. Granik,* 386 F.3d 404, 412 (2d Cir.2004) (internal quotation marks and citation omitted)). "The [ ] exceptions to the presumption of the enforceability of [an appellate or collateral attack] waiver . . . occupy a very circumscribed area of [Second Circuit] jurisprudence," *United States v. Gomez–Perez,* 215 F.3d 315, 319 (2d Cir. 2000), and there are only four situations in which a waiver of appeal or collateral attack rights is not enforceable:

> when [1] the waiver was not made knowingly, voluntarily, and competently, [2] when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, [3] when the government breached the plea agreement, or [4] when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

*United States v. Buissereth,* 638 F.3d 114, 118 (2d Cir. 2011).

Ms. Ariano does not argue that any of these four scenarios was present, and the Court is confident that the waiver included in Ms. Ariano's Plea Agreement was knowing and voluntary. Ms. Ariano signed the waiver, as well as a draft waiver prior to the plea hearing (*see* Caldwell Aff. ¶¶ 5–6), and stated in open court that she understood that she was "knowingly and intelligently waiving [her] appeal [and § 2255] rights" (Plea Hr'g at 31–32). Further, Ms. Ariano does not claim ineffective assistance of counsel as to her decision to plead guilty, or to waive her appellate and collateral attack rights, and thus, the waiver of appeal and collateral attack rights contained in the Plea Agreement must be enforced.

### B. Restitution and Amount of Loss

Ms. Ariano's argument regarding denial of effective assistance of counsel stems from her claim that the amount of restitution in her Plea Agreement, and considered at sentencing, was incorrect, and that counsel was ineffective as a result of this miscalculation.

A claim of ineffective assistance of counsel challenging a guilty plea is assessed under the two–pronged standard first articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), and as further construed by *Hill v. Lockhart*. *See Hill*, 474 U.S. 52, 58 (1985) ("We hold therefore that the two–part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."). The first prong considers whether counsel's performance was objectively unreasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688. To satisfy this element, an error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and counsel's performance must have been "outside the wide range of professionally competent assistance," *id.* at 690. Second, the petitioner

must affirmatively prove prejudice by showing that counsel's errors were so serious that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694.  In the context of a plea agreement, this means that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Petitioner's argument as to the amount of loss calculation fails *Strickland*'s first prong, as she cannot show that her attorneys' performance was objectively unreasonable "under prevailing professional norms." In fact, Ms. Ariano and her attorneys were in agreement about the loss calculation: she acknowledges in her Petition that the full loss amounted to $516,000 (Pet. at 4), and her attorneys both attest that they explained how the amount of loss was calculated, and that Ms. Ariano indicated that she understood why it was set at $516,000 (*see* Aff. of Christopher Caldwell [Doc. # 7–1] ¶¶ 9–10; Aff. of Frank Bevilacqua [Doc. # 7–2] ¶¶ 8–10). At her sentencing, the Court stated that "[t]he full restitution originally owing is not disputed" (Sent. Tr. 37:22–23), though the "Court will resolve any disputes" (*id.* at 37:21–22), and the "sum will be adjusted" (*id.* at 37:8) if necessary.

The section of the Mandatory Victims Restitution Act ("MVRA") describing the "procedure for issuance and enforcement of order of restitution" provides that "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Because there is no

dispute as to what the "full amount" of loss was here, i.e., $516,000, Petitioner's argument that the restitution calculation was erroneous must fail.[1]

As the Court concludes that counsel's performance as to the amount of loss calculation does not meet the "objective unreasonableness" prong under *Strickland*, it is unnecessary to proceed to the second part of the inquiry.

### C. Evidentiary Hearing

Ms. Ariano has not requested an evidentiary hearing as to the claims raised in her § 2255 petition. A hearing is not required here, as the record plainly demonstrates that Petitioner is not entitled to relief and her claims are without merit. *See United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990) ("Where a petition omits meritorious allegations that can be established by competent evidence, it would go too far to say that it was error for the district court to have failed to conduct a full evidentiary hearing." (internal citations omitted)). Because it plainly appears from the Court's examination of the record that Ms. Ariano's petition lacks any meritorious claim, no evidentiary hearing is necessary.

## III. Conclusion

For the reasons discussed above, Ms. Ariano's Petition [Doc. # 1] to Vacate, Set Aside, or Correct her Sentence is DENIED without a hearing.

The only remaining issue is whether to issue a Certificate of Appealability ("COA"). Under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right." *Id.* In order to sustain this burden, Petitioner would

---

[1] However, to the extent that Petitioner seeks to be given "credit" against the original restitution amount of $516,000, the Government asks that the "clerk of court, responsible for collecting the funds and crediting Petitioner, . . . ensure that Petitioner is given credit for the $230,724.14 recovered by Webster bank." (Gov't's Opp'n [Doc. # 7] at 20.)

have to show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citations omitted). "Where a district court has rejected [a petitioner's] claim[] on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim[] debatable or wrong." *Id.* Here, the Court does not find that reasonable jurists could determine that Ms. Ariano's counsel was constitutionally ineffective, either as to her decision to plead guilty or as to the amount of loss calculation. Therefore, the Court declines to issue a COA.

      The Clerk is directed to enter judgment for Respondent and to close this case.

IT IS SO ORDERED.

        /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of December, 2012.